UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWUAN FREEMAN,

           Plaintiff,                        No. 09-CV-13184

vs.                                        Hon. Gerald E. Rosen

CITY OF DETROIT AND DETROIT
POLICE OFFICER JAMES NAPIER,

           Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANT
CITY OF DETROIT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         May 16, 2011

PRESENT:   Honorable Gerald E. Rosen
                        United States District Chief Judge

I.  INTRODUCTION

This Section 1983 police excessive force action is presently before the Court on the City of Detroit's August 30, 2010 Motion for Partial Summary Judgment, in which the City seeks dismissal of Plaintiff's *Monell*[1] claim for failure to state a claim upon which relief may be granted. After twice being granted extensions of time, Plaintiff finally responded to the City's motion on December 17, 2010.

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-95 (1978).

1

Having reviewed and considered the parties' briefs and supporting exhibits, and the entire record of this matter, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Defendant's motion "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff's Complaint arises out his arrest on a narcotics charge that occurred on July 10, 2009. At approximately 9:30 p.m. on that date, Detroit Police Officers James Napier and Michael McGinnis were on duty, in full uniform and operating a marked police car. The officers responded to a domestic violence police radio run to 18980 Ohio Street in the City of Detroit which described a felonious assault by a male perpetrator.

When the officers arrived at the location, they observed Plaintiff Dwuan Freeman sitting in the driver's seat of a running motor vehicle in an alley adjacent to the location, blocking the sidewalk. Freeman was consuming alcohol. As Officer Napier approached the vehicle, he observed Freeman take a clear bag of pills, which were later identified as ecstacy, from the vehicle cupholder and place the drugs in his front pants pocket. Officer Napier walked around the car, opened the driver's door, and ordered Freeman to exit the vehicle. Plaintiff and Defendant have different versions of the circumstances that ensued

thereafter.

Plaintiff alleges that he attempted to be friendly with Officer Napier because they had gone to high school together, but Napier did not reciprocate.[2] Instead, Plaintiff alleges that Napier used profanity, ordered him out of his vehicle and patted him down. According to Plaintiff, Officer Napier did not find any weapons or contraband on him. Meanwhile, Officer McGinnis allegedly searched Plaintiff's car without asking for his consent. Plaintiff claims that Napier then ordered him to step to the rear of his vehicle where he again was patted down. Napier then went to his patrol car, returned, and allegedly patted Plaintiff down a third time.

Plaintiff further alleges that Napier also reached into the back of his (Plaintiff's) pants and inside his underwear. After a brief conversation with Officer McGinnis about having found something during the search of his person, Napier purportedly punched Plaintiff in the face, breaking his nose. According to Plaintiff, Officer Napier continued to abuse him but Plaintiff never made any attempt to defend himself, and eventually, he was handcuffed and put into the patrol car.

Defendant's version of what transpired is markedly different. Defendant claims that after Napier ordered Plaintiff to exit his vehicle, he informed Plaintiff that he was being arrested for narcotics possession and began to handcuff him. Napier had just

---

[2] Though Plaintiff cites to the transcript of Plaintiff's Deposition throughout his account of the events of July 10, 2009, no transcript nor any excerpts therefrom has ever been filed.

placed a handcuff on Plaintiff's left wrist when Plaintiff attempted to jerk his left arm away from the officer and run away. Officer Napier, however, held onto Plaintiff's left wrist to keep him from running. When Plaintiff finally stopped trying to run away, he threw a a closed-fist punch which just missed Officer Napier. Allegedly in response to Plaintiff's aggression, Officer Napier struck Plaintiff in his neck/jaw area. The two men fell to the ground and Plaintiff continued to attempt to strike Officer Napier and escape. Finally, Officer Napier was able to subdue Plaintiff and handcuff his right wrist, and Plaintiff was taken to jail. Freeman allegedly suffered cuts and bruises and other injuries, as a result of the scuffle with Officer Napier.[3]

Plaintiff was arraigned on July 12, 2009 on felony drugs and open intoxicant charges and released on bond. On July 24, 2009, all criminal charges against Plaintiff were dropped. This lawsuit was thereafter filed on August 17, 2009.

In his Amended Complaint, Plaintiff alleges two counts: In Count I Plaintiff alleges a Section 1983 excessive force claim against the individual Defendant Officers.[4]

---

[3] In his Complaint, Plaintiff alleges that Napier punched him with such force that he broke his nose and "busted" his lip. *See* Complaint, ¶¶ 33, 38. He further alleges that he was handcuffed so tightly (by Officer John Doe) that he suffered bruising and neurological damage to his hands. *Id.* ¶ 46.

[4] Though Count I is captioned as being a claim against the "Defendant Officer<u>s</u>," Plaintiff identified only Defendant Napier by name; Napier's partner was identified only as a "John Doe." From the assertions in the City's summary judgment brief, apparently, Napier's partner on the date in question was Officer McGinnis. Plaintiff has never moved to amend his complaint to name Officer McGinnis as a party-defendant, nor has McGinnis been served with process in this matter.

Count II contains Plaintiff's Section 1983 *Monell* "policy and practice" claim against the City of Detroit.

Discovery closed in this matter on July 30, 2010 and the City of Detroit timely filed its motion for partial summary judgment on August 30, 2010, in accordance with the deadlines set forth in the Court's Scheduling Order. In this motion, the City seeks entry of summary judgment in its favor and dismissal of Plaintiff's "policy and practice" claim (Count II of Plaintiff's Amended Complaint).

### III.  DISCUSSION

#### A.     APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). The Court will apply these standards in deciding the City of Detroit's motion in this case.

B.   *MONELL* LIABILITY

It is well-settled that a municipality cannot be held liable under 42 U.S.C. § 1983 based on a theory of *respondeat superior*. "[U]nder § 1983, local governments are responsible only for "their *own* illegal acts. . . . The are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)) (emphasis in original). A plaintiff who seeks to impose liability on a local government under § 1983 must prove that "action pursuant to official municipal policy" caused his injury. *Monell*, 436 U.S. at 691. Official municipal policy includes the

decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick, supra*; *Monell, supra*; *see also Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986). The alleged policy must be the "moving force of the constitutional violation." *Monell, supra* at 694. As enunciated by the Sixth Circuit, this requires that the plaintiff "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F. 3d 358, 364 (6th Cir. 1993).

In this case, Plaintiff has not pointed to any decisions of City lawmakers or any acts of its policymaking officials. Rather, Plaintiff's § 1983 claim against the City of Detroit is a "policy and practice" claim predicated upon a "failure to train" theory of liability.

In limited circumstances, a local government's failure to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Connick, supra*, 131 S.Ct. at 1359. "A municipality's culpability of a deprivation of rights is at its most tenuous where the claim turns on a failure to train." *Id.*; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) ("[A] 'policy' of 'inadequate training'" is "far more nebulous and a good deal further removed from the constitutional violation, than was the policy in *Monell*.")[5]

---

[5] At issue in *Monell* was the unwritten policy of the New York City Department of Social Services requiring pregnant employees to take unpaid leaves of absence before

In any event, it is not enough for the plaintiff simply to show that the City pursued an official policy or custom; he must also show that such official policy or custom was adopted by the official makers of policy with "deliberate indifference." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). Thus, to satisfy the requisites of Section 1983, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick, supra* (quoting *Canton*, 489 U.S. at 388.)

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commissioners of Bryan, County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997). When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent in the policymakers' choosing to retain that program. *Id.* at 407.

However, a single act of misconduct by an officer is insufficient to impose municipal liability under a failure to train theory. *Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). Where the policy itself is not unconstitutional, "considerably more proof than the single incident would be necessary. . . to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional

---

those leaves are required for medical reasons.

deprivation." *Id. See also, Sudel v. City of Hamtramck*, 221 Mich. App. 445, 562 N.W.2d 478 (1997):

> As a matter of pure logic, a single incident does not a custom, policy or practice make. . . . Where a policy maker's decision does not itself directly order or authorize a constitutional violation, more than a single incident should be necessary to establish causation.

*Id.* at 469-70.

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan County, supra*, 520 U.S. at 408. Showing only that one individual officer was inadequately trained is insufficient to establish that the lack of proper training is the "moving force" behind the plaintiff's injury. *Id.* "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris,* 487 U.S. at 390-91.

Plaintiff here has not met the above standards. Plaintiff has not alleged, let alone proven, a pattern of similar constitutional violations. The only evidence proffered by Plaintiff is that Defendant Napier has been sued under Section 1983 in three other cases, and Officer McGinnis, Napier's partner on the date of the incident complained of in this case, was sued once before. *See* Plaintiff's Response Brief, pp. 17-19.[6] However, in

---

[6] The cases relied upon by Plaintiff in which Napier was named as a defendant are *Andrews v. City of Detroit, et al.,* EDMI No. 09-11462; *Seals v. City of Detroit, et al.,* EDMI No. 09-14725; and *Hayes v. Napier*, EDMI No. 10-10476. Defendant

9

none of those cases were there ever any factual findings nor any determination of liability on the officer's or the City's part. Two of the cases in which Napier was named as a party-defendant, as well as the one case in which Officer McGinnis was a party, settled extra-judicially without any findings having been made nor any dispositive motions ever filed. The fourth case remains pending before another judge of this court. (No findings of fact have been made nor have any dispositive motions been filed in that case, either.)[7]

But in any event, as the Supreme Court held in *City of Canton*, and reiterated in *Bryan County* and again, most recently in *Connick*, the fact that a particular officer may be unsatisfactorily trained is insufficient to demonstrate the requisite "pattern of constitutional violations" needed in a failure-to-train claim to "establish that the 'policy of inaction' was the functional equivalent of a decision by the city itself to violate the Constitution." *See Connick v. Thompson*, 131 S.Ct. at 1366 (quoting *City of Canton*, 487 U.S. at 395). As the Court reasoned in *Canton*:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. . . . It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the

---

McGinnis was one of the named-defendants in *Russell v. City of Detroit*, *et al.,* EDMI 08-14132.

[7] The cases cited in footnote 2 at page 17 of Plaintiff's brief do not support Plaintiff's theory, either. The cited cases involved the liability of *individual defendants and individual supervisors* and whether they were entitled to qualified immunity; none of the cases involved a municipality's *Monell* liability.

10

>particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.,* 487 U.S. 390-91.

Furthermore, to recover from a municipality under § 1983, a plaintiff must also establish a "rigorous" standard of causation. *Bryan County*, 520 U.S. at 405; *Connick*, 131 S.Ct. at 1368 (Scalia, J., concurring). The plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Plaintiff here has pointed to no other incident tending to make it more likely than not that his injury flows from the municipality's action, rather than "some other intervening cause." *Id.* Lacking this requisite causal link, even if Plaintiff had demonstrated the existence of an unconstitutional policy, his Section 1983 claim against the City fails.

## CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has failed to state a Section 1983 claim against the City of Detroit upon which relief may be granted. Therefore,

IT IS HEREBY ORDERED that Defendant City of Detroit's Motion for Partial Summary Judgment **[Dkt. # 18]** is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Section 1983 claim against the City of Detroit, as alleged in Count II of Plaintiff's Amended Complaint, as well as the

*respondeat superior* claims against the City of Detroit as alleged in Count I, are hereby DISMISSED, with prejudice.

Therefore, this case will proceed to trial only on Plaintiff's Section 1983 claims against individual Defendant James Napier.

SO ORDERED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: May 16, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 16, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager